# UNION NATIONAL BANK v. STATE NATIONAL BANK et al., Appellant.

## Division Two, March 14, 1900.

1. **Foreign Corporation**: MORTGAGE: JUDGMENT OF COURT OF ANOTHER STATE THEREON: ESTOPPEL. The judgment of a court of Illinois, holding invalid a mortgage conveying Illinois and Missouri land, given by an Illinois corporation doing business in this State in pursuance to a meeting of directors had in this State, does not affect the title to the lands in this State, nor the validity of such mortgage as respecting the Missouri lands, since that court had no jurisdiction over such lands.

2. ————: CAPACITY TO HOLD LANDS UNDER LAWS OF ITS STATE. It is for the courts of this State, and not for those of Illinois, to determine the capacity of a corporation organized under the laws of Illinois to acquire and hold land in this State, and also the effect of a mortgage authorized to be made at a meeting in this State of the directors of such Illinois corporation.

3. ————: MAKING MORTGAGE: CORPORATE ACT. All the directors of an Illinois corporation were given notice of a meeting to be held in this State, and three of the five were present, and unanimously authorized the president (one of them) to make a mortgage which conveyed Missouri land to a *bona fide* creditor. The laws of Illinois make void the action of any meeting of the directors of a corporation organized under them if held beyond the limits of that State, "unless such meeting be authorized or its acts ratified by a vote of two-thirds of the directors, at a regular meeting." *Held,* first, that the making of the mortgage was a corporate act; and, second, that said mortgage was without authority and void.

4. ——— : ——— : ——— : BUSINESS IN THIS STATE: DEBT AND LAND HERE. Nor was such mortgage legalized by the fact that the Illinois corporation was organized for the purpose of doing business in this State, that it conveyed all its property in this State to secure its only creditor in this State, and that the mortgage was made to enable it to pay its debts and carry on its business. The company could not transact its corporate business in this State in any other manner than in that prescribed by its charter.

5. ——— : ——— : ——— : LEGALIZING VOID MORTGAGE: LAW OF 1891. Nor is such void mortgage legalized by the Act of 1891 providing that a foreign corporation shall have an office in this State, and that "it shall not mortgage, pledge or otherwise encumber its property in this State to the injury or exclusion of any creditor of this State" , unless the creditor who is attacking the mortgage is himself a mortgagee or pledgee.

6. ——— : ——— : ATTACHMENT AS INCUMBRANCE UNDER LAW OF 1891: COLLATERAL ATTACK. The defense that the defendant in an attachment suit had its chief place of business in this State, and that ordinary legal process could have been served on it here, is, in the absence of fraud, to be pleaded to the attachment.. Such matters can not be raised in a collateral proceeding unless fraud is pleaded, and if fraud is pleaded, and not sustained by the evidence, the attachment will not, under the statute, constitute an "incumbrance on the land to the exclusion and injury of a creditor" who claims under the attachment.

7. ——— : ——— : STOCK ALL OWNED BY PRESIDENT. Nor is such mortgage made legal by the fact that it was executed by the president who was the owner of all the stock, the other four directors being mere nominal stockholders. The execution of the mortgage being an act of corporate character, the mortgage could not be legally executed outside of Illinois under the laws of that State which constituted its charter.

Appeal from Buch'anan Circuit Court.—*Hon. H. M. Ramey,* Judge.

AFFIRMED.

*Vinton Pike* and *Brown & Dolman* for appellants.

(1) The holding of the trial court that the validity of the Missouri mortgage had been adjudicated in the Illinois

court, was error.  Story on Conflict of Laws (Redfield's Ed.),
sec. 591; 3 Am. and Eng. Ency. of Law, p. 565; Davis v.
Headley, 22 N. J. Eq. 115; Pittsburg & St. Louis Railroad's
Appeal, 4 Atl. Rep. 385; McCartney v. Osborn, 121 Ill.
408; Jones on Real Prop., sec. 189; Boyce v. St. Louis,
29 Barb. 650.  (2)  The corporation is a person to the ex-
tent of its general powers, subject to the laws of the state
or country in which it does any act with respect to such act,
and the laws of the state of its creation prescribing the
manner in which those powers shall be executed have no
extra territorial effect.  Hoyt v. Sheldon, 3 Bosw. (N. Y.)
267; Hoyt v. Thompson, 19 N. Y. 207; Ellsworth v. Rail-
road, 98 N. Y. 553; Warren v. Bank, 149 Ill. 25; Saltmarsh
v. Spaulding, 147 Mass. 229; 1 Beach on Priv. Cors., sec.
289.  The foreign corporation must not only conform to the
express laws but to the legislative policy of the State in
which it does business, as shown by the general course of
its legislation and decisions of its courts.  Christian Union
v. Yount, 101 U. S. 356; Bank v. Earle, 13 Pet. 519;
Empire Mills v. Gro. Co., 15 S. W. Rep. 505; U. S. Trust
Co. v. Earle, 73 Ill. 142; Starkweather v. Bible Society, 72
Ill. 50.  (2)  The attachment of plaintiff constituted an
"incumbrance" on the land attached, to the "exclusion" and
"injury" of the defendant bank.  (4)  The deed of trust
attacked was made by the president, who was the owner of
the entire capital stock of the company, and was valid with-
out the action of the directors.  Bank v. Shoemaker, 68
Mo. App. 592.

*Stauber, Crandall & Strop* for respondent.

(1)  We believe that the adjudication of the same
questions between these same parties constitutes an estoppel.
Poorman v. Mitchell, 48 Mo. 45; Hickerson v. Mexico, 58

Mo. 61; Black on Judgs., sec. 504; Freeman on Judgs. (3 Ed.), sec. 248; Cromwell v. County of Sac, 4 Otto U. S. 351; Union Nat. Bank v. State Nat. Bank, 168 Ill. 256. And the appeal from decision of such adjudication does not destroy its effect as such estoppel. Moore v. Williams, 132 Ill. 591; People v. Rickert, 159 Ill. 496. (2) The meeting of the board of directors of the packing company held in St. Joseph, Mo., February 18, 1895, was illegal and its action in attempting to authorize the execution of deeds disposing of all its property and suspending its business as a corporation was absolutely void. Sec. 20, chap. 32, R. S., Ill. 1889; 1 Morawetz Priv. Corp. (2 Ed.), sec. 533; Hilles v. Parish, 14 N. J. Eq. 380; Mo. Lead M. & S. Co. v. Reinhard, 114 Mo. 218; 1 Thompson on Corps., sec. 694; Franko-Texan Land Co. v. Laigle, 59 Tex. 339. (3) The president of the Moran Packing Company *virtute officii* had no authority to execute the deed to appellant. McKeag v. Collins, 87 Mo. 164; Calumet Paper Co. v. Haskell Printing Co., 144 Mo. 331; Winsor v. Bank, 18 Mo. App. 665; Union Nat. Bank v. State Nat. Bank, 168 Ill. 256. (4) The act of the Missouri Legislature of April 21, 1891 (Laws 1891, p. 75), has no application to the facts of this case, and could not have the effect contended for by appellant and be constitutional, as the courts of this State must be and are as open to the citizens of other States as to its own. Art. 4, sec. 2, Cons. U. S.; Art. 2, sec. 10, Cons. Mo.; Carson-Rand Co. v. Stern, 129 Mo. 381; Union Nat. Bank v. State Nat. Bank, 168 Ill. 256.

BURGESS, J.—This is an action by plaintiff, a national bank doing business in the city of Chicago, Illinois, against the defendant bank, doing business in the State of Missouri, and its co-defendants, to have adjudged a certain deed of trust given by the John Moran Packing Company to the use of the defendant, the State National Bank, fraudu-

lent and void, and to set the same aside, and to release the property therein described, upon which plaintiff has a judgment lien, in order that plaintiff may sell said property free from the incumbrance of said deed of trust, and that it may bring its full value at such sale.

The plaintiff, a creditor of the John Moran Packing Company, an Illinois corporation, doing business in this State, began suit by attachment against it in the circuit court of Buchanan county on the 22d day of February, 1895. Under the writ of attachment issued all of the property of the packing company, including that involved in this litigation, was levied upon. The attachment was sustained and judgment rendered in favor of plaintiff against said company for the sum of $27,034.91.

This suit was then instituted by plaintiff against the defendants to set aside a deed of trust executed on the same property by the John Moran Packing Company to the defendant Donovan on the 18th day of February, 1895, for the use of the defendant, the State National Bank, to secure two notes for twenty-five thousand dollars each, executed by the packing company, by its president, John Moran, to the State National Bank on November 8, 1894, and due respectively in three and four months. This deed of trust was authorized at a meeting held in the city of St. Joseph, at which only three of the board of directors were present, while the board was composed of five directors. The petition alleges that said deed of trust was fraudulently procured; that the meeting of the directors was illegal and void; and the execution of the deed of trust to the use of the defendant bank, by which it destroyed the corporate existence of the John Moran Packing Company as a going concern, was in violation of its charter, being the general law of the State of Illinois.

The answer of the State National Bank admits the incorporation of the plaintiff, and of the defendant State Na-

tional Bank, as alleged in the petition, and denies all other allegations in the petition except as in the answer afterwards stated. It then alleges that on the 18th day of February, 1895, the John Moran Packing Company was justly indebted to the defendant bank in the sum of fifty thousand dollars for money borrowed, evidenced by two promissory notes for $25,000 each, and that on the day last named the John Moran Packing Company, by order of its board of directors, duly and lawfully made, and for the purpose of securing the payment of said notes, executed and delivered to defendant Donovan as trustee the deed of trust in question. That on the ——— day of February, 1895, the defendant, Andriano, as acting trustee in said deed of trust, sold the real estate therein described, and the defendant bank became the purchaser thereof. The answer then alleges that the John Moran Packing Company was at all the times mentioned in the petition and the answer, and at the time of and long before the creation of the indebtedness mentioned in said pleading, a corporation created and existing under the laws of Illinois, and doing business in that State, and also carrying on a separate and independent business in the State of Missouri, and located at Buchanan county in said State, but has never been a resident of this State. That the indebtedness aforesaid of said John Moran Packing Company to defendant bank was incurred and created in the State of Missouri, and was due and payable in said State to said bank, a citizen thereof. It then avers that any lien that plaintiff may have on said property was fraudulently procured by collusion with said John Moran and said packing company, and that there were no grounds of attachment against either of them at the time plaintiff sued out its writ.

Plaintiff in its reply to the answer of defendant bank alleged that the defendant bank had filed a bill in the courts of the State of Illinois against the plaintiff and others, to foreclose a mortgage on certain real estate lying in that

State, which mortgage was authorized and given to secure the same debt described in plaintiff's petition in this case, and based on the same facts, and involving the same question of the legality of the meeting held in St. Joseph, Missouri, February, 1895, and alleging that the adjudication of these questions by said court, was an estoppel as to all questions actually involved and passed on in that case between the parties thereto.

The incorporation of the John Moran Packing Company was under the law of the State of Illinois, and the certificate of incorporation recited that the location of the principal office was at that time in the city of Chicago, although all the business, which was that of buying and selling, killing and packing, was done at St. Joseph, Missouri.   John Moran owned all the stock, although some of it was in the name of others.   Of the five directors, Moran, Fogarty and Linaker lived in St. Joseph; Nash lived in Chicago; Moran was president and manager.

On the 18th day of February, 1895, the John Moran Packing Company executed the conveyance which is here sought to be set aside, as alleged in the petition.   Before its execution, however, and on the same day, a meeting of the board of directors of the packing company was held at St. Joseph, Missouri, at which its execution was ordered.   The meeting was properly called by Moran, as president of the company, and all the directors duly notified.   Of the five directors, Moran, Taylor and Fogarty were present, and all voted for the resolution directing the execution of the deed of trust.   Nash and Linaker were not present.

The validity of these deeds was afterwards questioned, and a meeting of the board of directors was held in Chicago, on March 25, 1895, at which all were present except Linaker, at which the former action of the board was ratified and new deeds ordered upon the same trusts without prejudice to any rights accrued under the former ones.

Nash voted against this resolution and all the other directors for it. Under this resolution deeds were executed on the same day in all respects like those of February 18, except the dates.

The defendant bank pleaded in abatement to the attachment, but by agreement of the parties, the plea was subsequently withdrawn, the attachment sustained, and judgment rendered in favor of plaintiff for the amount sued for.

Thereafter the defendant, the State National Bank, brought suit in Illinois, to foreclose a mortgage bearing date February 16, 1895, executed by John Moran, and Kate Moran, his wife, on certain real estate in Chicago. In addition to Moran and wife, the defendants in the suit were the St. Joseph Stock Yards and Terminal Company, a subsequent mortgagee, and the Union National Bank of Chicago, a subsequent attaching creditor. In this suit it was held that the mortgage was not fraudulent, and was a first lien upon the property.

The Buchanan circuit court, on the 10th day of December, 1896, made its final decree in this case, setting aside the defendant's mortgage of February 18, 1895, so far as it affected the attachment lien of plaintiff, the court holding in a written opinion that the mortgage in question, dated February, 18, 1895, was void because the meeting of the directors which authorized it was held in this State, and that the adjudication to that effect with reference to the Illinois mortgage constituted an estoppel upon the defendants in this case.

After unsuccessful motion for a new trial defendant bank appeals.

No question of fraud is raised on this appeal, so that the questions to be passed upon are of law, rather than of fact, and the first of these is the effect of the judgment of the Illinois court with respect to the lands in that State, upon the land in this State. That suit was brought by the State National Bank to foreclose the mortgage executed by

John Moran and wife to certain real estate in Chicago. To this action Moran and wife, the St. Joseph Stock Yards and Terminal Company, and the Union National Bank of Chicago, a subsequent attaching creditor, were made parties. It was decreed the foreclosure of the mortgage was a first lien upon the property described in the mortgage. But the St. Joseph or Missouri property which is in question here, was not involved in that litigation, and it is difficult to see how the defendant bank is estopped by the result of that suit, with respect to any question of law involved in regard to the land in this State, over which it did not have and could not acquire jurisdiction.

"If the matter in controversy is land, or other immovable property, the judgment pronounced in the *forum rei sitae* is held to be of universal obligation, as to all the matters of right and title, which it professes to decide in relation thereto......On the other hand, a judgment in any foreign country, touching such immovables, will be held of no obligation." Story on Conflict of Laws (Redfield's Ed.), sec. 591.

"It has been declared to be the well settled rule in America, that any title or interest in land or in other immovables, can only be acquired or lost agreeably to the law of the place where the same is situated." 3 Am. and Eng. Ency. of Law (1 Ed.), p. 565, note 4, and cases cited.

It may be conceded that a court of equity has power to decree the performance of a contract relating to land beyond its jurisdiction, where it has jurisdiction over the parties, but no such decree can affect the land, and can only be enforced by compelling the party who has contracted to do so to execute a conveyance in accordance with the terms of the contract. In such circumstance it is the conveyance, and not the decree of the court, that affects the land. [Davis v. Headley, 22 N. J. Eq. 115.]

So it has been held that a decree of a court in one State

can not determine the validity of a mortgage on property in another State, or transfer the title to land in such State. [Pittsburg & S. L. R. Co.'s Appeal, 4 Atl. Rep. 385.] This is upon the ground that a State court has no extraterritorial jurisdiction, and without authority to transfer title to land beyond its limits.

In Osburn v. McCartney, 121 Ill. 408, lands in Pennsylvania and Illinois were devised and the courts of the former State had construed the will in a suit for the partition of the lands in that State, and it was held that the judgment in that suit did not operate as an estoppel in a suit in the Illinois courts for the portion of lands lying in that State, as the courts of the latter State were not bound by the construction of the will placed upon it by the courts of Pennsylvania, although the testator was a resident of that State.

It is for the courts of this State to determine the capacity of the John Moran Packing Company under the laws of this State to acquire and hold real estate, as well also as under its charter. [Jones on Real Prop., sec. 189; Boyce v. St. Louis, 29 Barb. 650.]

This brings us to the consideration of the validity of the mortgage of the John Moran Packing Company to the defendant bank made February 18, 1895, conveying the property in this State, which plaintiff claims is void because the meeting of the directors which authorized it was held in this State, instead of Illinois.

By section 20, of chapter 32, of the Statutes of Illinois of 1896, in regard to corporations, it is provided that the action of any meeting of the directors of a private corporation, its trustees or other officers corresponding to trustees, held beyond the limits of the State, shall be void, unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, trustees or officers corresponding to trustees at a regular meeting.

It is plain that the meeting of the board of directors

held in this State which directed the execution of the conveyance of the packing company's landed property in this State for the benefit of defendant bank, was in direct violation of the charter of the company.

The general rule is that a board of directors of a corporation may hold their meetings and transact business outside the limits of the State where it is incorporated, unless it is otherwise prescribed by its charter or by-laws. [1 Morawetz on Private Corporations (2 Ed.), sec. 533.] But where it is provided by its charter as in the case at bar, that the action of any meeting of the directors held beyond the limits of the State in which the company is incorporated shall be void, unless such meeting be authorized or its acts ratified by a vote of two-thirds of the directors, at a regular meeting in the absence of such authorization or ratification all of its acts of a corporate character are without authority and void. And such a ratification in order to be effective as to other creditors must occur before their rights have intervened. While the directors of the corporation were but its agents, Moran had no authority to convey its property without first being authorized to do so by action of the board of directors, and therefore the act of the board in directing the conveyance of the property to the use of defendant bank, was strictly a corporate act, and entirely unlike other acts not of a corporate but of a business character, which may be conducted in any State, when authorized by the corporation, and not prohibited by the laws of the State where transacted. While upon this, and similar questions, the authorities are in great conflict and irreconcilable, the decided weight seems to be to the effect that acts of a corporation of the character in question are corporate and not acts of agents. Assuming that we are correct in the position taken it must follow that the meeting of the board in this State was within the prohibition of the charter of the pack-

ing company. [Talmadge v. N. A. Coal & T. Co., 3 Head. 338.]

While it is not expressly so decided in either McCall v. Byram Manfg. Co., 6 Con. 427, or Bassett v. Monte Christo G. S. M. Co., 15 Nev. 293, it is clearly intimated in both cases, that where the directors of a corporation are restricted by its charter, or the laws of the State from which it derives its existence, in holding meetings of a corporate character to the limits of the State in which it is incorporated—the exercise of such power beyond the limits of such State would be void.

Nor are we able to concur with the contention of defendant, that the fact that the corporation was organized for the purpose of doing business in this State, that it conveyed all the property in this State to secure its only creditor in this State, that the mortgage was made for the purpose of enabling it to procure means with which to continue its business, paying its debts and going on with its operations, had the effect to legalize the mortgage which we have held was void because not executed in conformity with the provisions of the charter of the corporation.

That this State has the right to impose such terms, conditions and restrictions as it may see fit upon foreign corporations doing business in this State, or exclude them entirely may be conceded, but it does not hence follow that the packing company could transact its corporate business in this State in any other manner than that prescribed by its charter nor could it do so if so inclined.

But defendant insists that this State has expressed its policy in the respect now under consideration by "An act to require every foreign corporation doing business in this State to have a public office or place in this State at which to transact its business, subjecting it to certain conditions, and requiring it to file its articles or charter of incorporation with the Secretary of State, and to pay certain taxes and fees

therein," approved April, 1891.    [Laws of 1891, p. 75.]    It is true this law provides among other things that private corporations shall have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it, and where proper books shall be kept to enable it to comply with the laws of this State; that it shall not mortgage, pledge or otherwise encumber its real or personal property situated in this State to the injury or exclusion of any creditor of this State, and that no mortgage given to secure a debt created in another State shall take effect as against any citizen or corporation of this State until its liabilities to creditors of this State have been paid, but as plaintiff is not a mortgagee or pledgee of the company in a mortgage or pledge executed either in this State or elsewhere, it does not come within the provisions of the act in respect to such matters, and it has no tendency whatever to legalize the transaction in question.

It is contended that plaintiff's attachment constituted an incumbrance on the land attached to the "exclusion" and "injury" of the defendant bank.    That the packing company's chief place of business was in this State, as well as its president and managing officer, and was not subject to nonresident attachment.    That it was doing business in this State upon condition that ordinary process could be served upon it.    In the absence of fraud these questions could only be raised by plea to the attachment, as otherwise the result of the attachment could not be attacked collaterally, but defendant alleged in its answer in the case in hand that any pretended lien the plaintiff may have upon the property in question was fraudulently procured by it and through collusion and combination with said John Moran, and John Moran Packing Company; that at the time of the said pretended attachment, long before and ever since, there was no ground for the attachment against said parties.

This defense was not sustained by the evidence, and the trial court so found, and we think correctly.

A final contention is that the deed of trust in question was made by John Moran, the president of the packing company, who was the owner of the entire capital stock of the company, and was valid without the action of the directors. In support of this position, defendant relies upon Union Nat. Bank v. Shoemaker, 68 Mo. App. 592. That case is predicated upon the ground that the persons who made the sale of the property involved in that litigation, were the only *stockholders and directors* of the corporation and were in fact the corporation, while in the case at bar there were four directors beside John Moran and although they may have been but nominal stockholders they, together with Moran, composed the board of directors, and without the authority of *the board* he had no right to make the deed of trust. We do not therefore think that case an authority in this.

Now if the meeting of the board of directors directing John Moran the president of the John Moran Packing Company to make the conveyance had been held in Illinois in accordance with the provisions of the charter of the company instead of in this State there is no question but that it would have been valid. But such an instrument can not under the circumstances disclosed by this record be legally executed without such authority. [Missouri Lead M. & S. Co. v. Reinhard, 114 Mo. 219; Calumet Paper Co. v. Haskell Show Ptg. Co., 144 Mo. 331.]

The judgment should be affirmed, and it is so ordered.

*Gantt, P. J.,* and *Sherwood, J.,* concur.