EL FRESNAL IRRIGATED LAND CO. v. BANK OF WASHINGTON. (No. 5593.) *

(Court of Civil Appeals of Texas. San Antonio. Jan. 26, 1916.)

1. SUBMISSION OF CONTROVERSY ⊜⟹17 — AGREED STATEMENT OF FACTS — EXAMINATION OF PLEADINGS.

It is proper for the court to examine the pleadings in determining a case on an agreed statement of facts.

[Ed. Note.—For other cases, see Submission of Controversy, Cent. Dig. § 19; Dec. Dig. ⊜⟹17.]

2. CORPORATIONS ⊜⟹300 — AUTHORITY OF PRESIDENT.

In the absence of authority through the charter or directors, the president of a corporation has no greater control over corporate property and funds than any other director.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1320–1323; Dec. Dig. ⊜⟹300.]

3. CORPORATIONS ⊜⟹415—IMPLIED AUTHORITY OF PRESIDENT.

Where the president of a corporation is authorized to execute notes, there is no implied authority to execute liens or mortgages on corporate lands to secure such notes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. ⊜⟹415.]

4. CORPORATIONS ⊜⟹415 — AUTHORITY OF PRESIDENT—MORTGAGE.

Where a corporation organized for irrigation purposes did not in the ordinary course of business give liens to secure loans made to it, its president could not mortgage corporate land without authority from the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. ⊜⟹415.]

5. BILLS AND NOTES ⊜⟹340—BONA FIDE PURCHASERS—AUTHORITY OF PRESIDENT OF CORPORATION—NOTICE.

Where plaintiff took as collateral security for a private debt of the president notes executed by the president of the defendant corporation and purporting to be secured by a lien on corporate land, plaintiff was charged with notice that the president was not authorized to give such liens, and it was not an innocent purchaser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 825–828, 842–848; Dec. Dig. ⊜⟹340.]

6. CORPORATIONS ⊜⟹370—PURPOSE—NOTICE.

Corporations exist by law for the purposes defined in their charters, and he who deals with them is charged with notice of these purposes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. ⊜⟹370.]

7. CORPORATIONS ⊜⟹399 — AUTHORITY OF AGENTS—SCOPE.

Corporations, like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1602–1610; Dec. Dig. ⊜⟹399.]

8. BILLS AND NOTES ⊜⟹342—BONA FIDE PURCHASERS—NOTICE.

Where a bank took notes executed by the president of a corporation which purported on their face to be secured by a lien reserved in a deed to corporate land, which was recorded, the bank was charged with notice of the fact that no lien was reserved in the deed, and, although it took the note in the ordinary course of business, it was not an innocent purchaser.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1486–1488; Dec. Dig. ⊜⟹342.]

9. CORPORATIONS ⊜⟹414—APPARENT AUTHORITY OF PRESIDENT.

The execution of notes is not within the apparent authority of the president of a corporation, even where he acts as general manager.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1640–1646; Dec. Dig. ⊜⟹414.]

10. CORPORATIONS ⊜⟹429—AGENTS—ASSUMPTION OF AUTHORITY.

One cannot, by relying upon its agent's assumption of authority, charge a corporation for an unauthorized act of its agent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1720–1723, 1725; Dec. Dig. ⊜⟹429.]

11. BILLS AND NOTES ⊜⟹345 — BONA FIDE PURCHASERS.

Where the president of the A. corporation, as such, executed two notes to the B. corporation without consideration, and on the same day the B. corporation assigned the notes as collateral security to the C. corporation, and later a bank made a loan to the president of the A. corporation in his private capacity and to the B. and C. corporations, and took among other collateral the said two notes, the circumstances were such as to put the bank on notice of a fraudulent conspiracy against the A. corporation.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 996–1021; Dec. Dig. ⊜⟹345.]

12. BILLS AND NOTES ⊜⟹497—GOOD FAITH—BURDEN OF PROOF.

In such a case the burden was upon the bank to prove that it was a bona fide holder of the notes.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. ⊜⟹497.]

13. ESTOPPEL ⊜⟹52—NATURE AND ELEMENTS.

Where the president of a corporation, as such, without authority executed two notes without consideration, and later the notes were produced to secure a debt partly owed by the president in his private capacity, there was no element of estoppel against the corporation.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. ⊜⟹52.]

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by the Bank of Washington against the El Fresnal Irrigated Land Company. From a judgment for the plaintiff, the defendant appeals. Reversed.

Spears & Montgomery, of San Benito, for appellant. F. W. Seabury, of Brownsville, for appellee.

FLY, C. J. This is a suit instituted by appellee on two promissory notes for $750 each, purporting to have been executed by appellant to the San Benito Land & Water Company, and it sought the foreclosure of a lien on certain land. The trial court rendered judgment in favor of appellee for $1,955.25 and for the foreclosure of a lien on 2,000 acres of land.

The cause is brought to this court on the following agreed statement of facts:

(1) "The defendant is a corporation incorporated and existing under the laws of Texas, for the purpose of constructing, maintaining, and operating canals, ditches, flumes, feeders, laterals, dams, reservoirs, lakes, and wells, and

for conserving, storing, conducting, and transferring water to all persons entitled to the use of same for irrigation," etc.

(2) "The defendant was at all the times hereinafter stated, and is now, the owner of a tract of 2,000 acres of land in Cameron county, Tex., known as the El Fresnal Irrigated Land Company's subdivision of land in the Espiritu Santo grant in this county of Cameron, same being a part of share 1 in the partition of said grant, and being the same land conveyed by C. P. Barreda to Samuel Spears, trustee, by deed dated February 12, 1912, and recorded in Book 18, pages 144–147, of the deed records of this county, and by said Samuel Spears, trustee, conveyed to defendant by deed dated July 1, 1912, and recorded in Book 19, pages 452–454, of said records, having acquired and owing same for its corporate purposes."

(3) "On May 26, 1913, S. A. Robertson, as president and acting for said corporation, executed and delivered to the San Benito Land & Water Company the two promissory notes sued upon herein, same being in the principal sum of $750 each, bearing the date aforesaid, and due, respectively, on July 1, 1913, and January 1, 1914, which notes are identical, except as to their dates of maturity, and said note first maturing is now here copied in full as a statement of the terms of said two notes, as follows:

" '$750.     San Benito, Texas, May 26, 1913.

" 'On July 1, 1913, after date we promise to pay to the San Benito Land & Water Company, or order, seven hundred fifty and no/100 dollars, with interest at the rate of ten per cent. per annum from maturity until paid, interest payable annually, and further hereby agree that if this note is not paid when due to pay all costs necessary for collection, including 10 per cent. on all unpaid principal and interest for attorney's fees; past-due principal, interest, and attorney's fees to draw interest at 10 per cent. per annum the same as principal, with annual rests.

" 'This note is secured by a lien for water charges for the year 1913 on 2,000 acres of land in Cameron county, Texas, being El Fresnal Irrigated Land Company's subdivision of Espiritu Santo grant, in Cameron county, Texas, which said lien is set out in a deed by the San Benito Land & Water Company conveying said land, and this note shall not be held to change the terms and provisions of said deed in any other respect except as herein expressly provided.

" 'Voluntary payments on this note shall be made at San Benito, Texas, but if suit be brought thereon for debt, or for debt and foreclosure, same may be instituted and tried in Cameron or Travis counties, Texas, at the option of the holder.

" 'El Fresnal Irrigated Land Co.,
" 'By S. A. Robertson, Pres.' "

(4) "At the time said notes were executed by S. A. Robertson, as president of the defendant corporation, there was no provision in the charter or by-laws of the corporation, nor was there any resolution, order, vote, or other action of its board of directors, as far as shown by the minutes of said board, expressly granting to said president power or authority to execute notes and obligations in its name, or create a lien on said land for the purpose of securing any debt owing by it, but he was, as such president, lawfully in charge of and personally managing the business of defendant corporation, and, as such president, customarily executed, without express authority, all notes and obligations that were issued in the name of the corporation, and all notes and obligations so executed by him, except the present notes, were regularly paid or honored by the corporation. The two notes in question were, however, executed by S. A. Robertson, as such president for defendant corporation, under a misapprehension of facts as follows: At said time the defendant was not at all indebted to the San Benito Land & Water Company, and has not since been indebted to said company, and the defendant did not receive, nor did the San Benito Land & Water Company pay, any valuable consideration for said notes. That the San Benito Land & Water Company had not then, and has not since, executed any deed to defendant conveying said land, nor entered into any contract with defendant whereby a lien was fixed on said land for water charges for the year 1913, and that said land was acquired by defendant only in the manner above stated, and that, while there was a contract between defendant and the San Benito Land & Water Company, then duly recorded in Cameron county, Tex., whereby the latter company undertook to furnish water for the irrigation of said land, yet said contract provides that no water charges shall be made against the defendant, or constitute a lien upon its said lands so long as same remain in the hands of defendant, it being contemplated that the land should be subdivided, and water charges were to run only on the subdivision thereof after same were sold by the defendant. Said contract did not create any obligation on defendant to pay any moneys to the San Benito Land & Water Company, or create any lien on said lands for the water charges of the year 1913, mentioned in said notes. That the foregoing facts were well known to both defendant and to the said San Benito Land & Water Company at the time said notes were executed and delivered, but same were overlooked by the parties, and said notes, in fact, executed by mutual mistake."

(5) "On May 26, 1913, the San Benito Land & Water Company became indebted to the Rio Grande Construction Company in the sum of $3,500, to evidence which it on that day executed and delivered its notes for said sum to the said Rio Grande Construction Company, as collateral security therefor, the two notes herein sued on, which were duly indorsed by said San Benito Land & Water Company, the payee thereof, and in addition by S. A. Robertson."

(6) "On June 1, 1913, plaintiff herein loaned to the Hidalgo Construction Company, the Rio Grande Construction Company, and S. A. Robertson the sum of $10,000, then and there paid to them in cash, and to evidence said loan took from them a note for said sum by the terms of which note the Rio Grande Construction Company pledged as collateral security therefor the said $3,500 note given it by San Benito Land & Water Company, together with the notes herein sued on, collateral to said $3,500 note, and delivered same to plaintiff, who has ever since been, except as hereinafter stated, the legal and equitable owner and holder of the notes here sued upon, as such pledgee. Plaintiff paid and loaned the said sum of money on the security of the two notes herein sued upon, with other securities, and at that time had not had, and did not have, any actual knowledge of the circumstances surrounding the execution and delivery of the two notes here sued upon, as above set out."

(7) "Subsequently, the said $10,000 not having been paid at the maturity thereof, plaintiff, acting in accordance with its rights as pledgee, and in compliance with the terms of said pledge, did on June 15, 1914, and on September 21, 1914, sell the various collaterals pledged with it to secure said $10,000 note, and at such sales became the purchaser of said $3,500 note given by the San Benito Land & Water Company, and of the two notes herein sued upon, for a valuable consideration. That before the time of said two sales plaintiff had received information that the defendant herein denied the obligations of the two notes sued upon, and claimed same were given without consideration, and plaintiff then knew that the statement in said notes in regard to the lien securing same

was untrue in respect to the matters hereinbefore pointed out."

(8) "Plaintiff is now, under the pledgee's sale aforesaid, the legal and equitable owner and holder of said two notes and of any lien that under the foregoing facts may exist upon said lands securing the payment of said notes."

(9) "No part of the principal or interest of said notes has been paid, and that on October 22, 1914, plaintiff placed said notes in the hands of F. W. Seabury, an attorney, for collection, and contracted with him to pay for his services in making such collection the 10 per cent. attorney's fees in said notes respectively stipulated, which amount would be a fair and reasonable compensation for such service and the compensation usually allowed in suits of this character."

(10) "Plaintiff has collected a part of the other collateral to its said $10,000 note, and has sold out all the collateral thereto not so collected, and realized from such sales and collections the sum of $2,539.50, which has been credited on said $10,000 note. That, the remainder of said note being overdue and unpaid, plaintiff in another suit in this court recovered judgment against the makers and indorsers of said note for the same, but an execution on said judgment has been returned unsatisfied, and that neither the makers nor the indorsers of said $10,000 note have property subject to execution, and are wholly insolvent. That plaintiff will not be able to collect its aforesaid debt, even if it recovers and receives the full amount herein sued for. That the indorsers on the note herein sued upon are also insolvent."

(11) "Plaintiff was, before the pledgee's sale aforesaid, pledgee and holder for a valuable consideration of the two notes herein sued upon, without any notice whatever of any invalidity in or defense to said notes, except in so far as plaintiff may have been bound to take notice of the terms of the water contract aforesaid, which contract was of record in the real estate records of Cameron county at the time, and except as it may have been bound to take notice of the authority which said S. A. Robertson had as president of defendant corporation."

[1] The ninth assignment of error is taken up out of its order and disposed of adversely to appellant. The contention therein is that it is recited in the judgment that the court arrived at its conclusion "after hearing and considering the pleadings of the parties and the agreed statement of facts," and the court should not have considered the pleadings at all. There is no merit in the proposition. Of course, the pleadings were heard and considered as pleadings, and not as evidence. The court was necessarily compelled to consider the pleadings in order to ascertain what was the subject of litigation, because the defense does not very clearly appear from the agreed statement on which the cause was submitted. The recital as to pleadings is found in most judgments, and is merely formal in its nature, just as is a recital as to argument of counsel. There is no rule forbidding a court to consider the pleadings in an agreed case. There is nothing to the contrary in the case of Thaison v. Sanchez, 13 Tex. Civ. App. 73, 35 S. W. 478, wherein it was held that when an agreed case is submitted in an appellate court issues as to pleadings are laid aside.

The first assignment of error assails the power and authority of the president of the irrigation company to create a lien on the land of the company in the absence of such authority being given in its charter, or by the board of directors, when no implication of authority arises from the manner and custom of the corporation in doing business with others. It is admitted that no such authority was vested in the president of the corporation by the charter or the directors, and the facts fail to show that it was customary for the president to execute liens on the land of the company. In the notes executed by the president no lien was given on the land, and no intention is evidenced to give a lien through the medium of the note. The recital in the note is that it is secured by a lien for water charges set out in a certain deed made by a certain corporation to appellant. In fact no such lien was reserved in any deed. However, we will consider the case as though the lien was attempted to be given by the note.

[2, 3] The well-established general rule is that the president, in the absence of authority through the charter or the directors, has no more control over the corporate property and funds than any other director. His official station in itself confers no power or authority to act or contract for the corporation, and, where he is clothed with the power to execute notes, no authority will arise by implication or otherwise to execute liens on corporate lands to secure such notes. The president of a corporation is not authorized to mortgage its property to secure a loan without specific authority from the board of directors. Currie v. Bowman, 25 Or. 364, 35 Pac. 848; Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222; Leggett v. Mfg. Co., 1 N. J. Eq. 541, 23 Am. Dec. 728; Union Nat. Bank v. State Nat. Bank, 155 Mo. 95, 55 S. W. 989, 78 Am. St. Rep. 560.

[4, 5] According to the facts, the president had never before attempted to create a lien on the property of the corporation, and, his act being out of the usual course of business, appellee was bound to inquire as to the authority of the agent to create a lien on the property of the corporation. Appellant was a corporation organized for irrigation purposes, and it was not in the ordinary course of its business to give liens to secure loans made to it. Appellee was charged with notice that the president could not mortgage the land of his corporation without authority of the board of directors, and it knew that the debt was created in the interest of the president and not in that of the corporation, which did not receive a dollar of the money. It was not an innocent purchaser of the notes. Land Co. v. McCormick, 85 Tex. 421, 23 S. W. 123, 34 Am. St. Rep. 815; Liquor Co. v. Magnus, 43 Tex. Civ. App. 463, 94 S. W. 1117; Gulf Grocery Co. v. Crews (Civ. App.) 146 S. W. 657.

[6, 7] As said by the New York Court of Appeals in Alexander v. Cauldwell, 83 N. Y. 480:

"Every one knows that corporations are artificial creations existing by virtue of law, and organized for purposes defined in their charters; and he who deals with one of them is chargeable with notice of the purpose for which it was formed; and, when he deals with agents or officers of one of them, he is bound to know their powers and * * * authority. Corporations, like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority."

[8] There was no lien reserved in a deed as recited in the notes, and appellee was charged with notice that there was no such lien reserved, for the deed was on record. The lien referred to as being in the deed was all upon which appellee could rely for the creation of a lien, and with that deed upon record appellee could not be an innocent purchaser. It was charged with knowledge of the falsity of the recital in the note. Waggoner v. Dodson, 96 Tex. 415, 73 S. W. 517.

[9] The act of Robertson in executing the notes was not, as claimed by appellee, within the apparent scope of his authority as president of the corporation. Appellee was charged with the knowledge that a president of a corporation has no apparent authority to execute liens on corporate property, and it should have made inquiry as to his authority under the charter or resolution of the directorate. The authorities cited by appellee have no applicability under the facts of this case. The facts did not indicate that Robertson had any authority to create a lien on the property of the corporation. It would not matter that he was general manager as well as president of the corporation; he could not, without authority from the charter or the corporation, place liens on its real estate. All the authority he had must have been given by the board of directors, for the general management of private corporations is placed in the hands of the directors by the statute. Rev. Stats. art. 1150; Cable Co. v. Telephone Co. (Civ. App.) 134 S. W. 429.

[10] As said in a quotation indorsed by the Supreme Court in Railway v. Faulkner, 88 Tex. 649, 32 S. W. 883:

"A party dealing with the agent of a corporation must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority, which may prove, as it did in this case, to be entirely unfounded."

Appellee could not indulge in the presumption as to the authority of the agent of the corporation to create liens, because such authority was not necessarily incident to or customarily exercised by presidents of private corporations engaged in irrigation purposes. Land & Irr. Co. v. Mercedes P. Co. (Civ. App.) 155 S. W. 286.

The fact that appellee may have acquired the notes before maturity, in the ordinary course of business, for a valuable consideration, and without notice, would not render appellant liable for the unauthorized act of its agent in endeavoring to place a lien on its property. Appellee presents no authority for the proposition that it would be an innocent purchaser, although the agent had no authority to execute the mortgage, and such act was not within the scope of his ordinary duties. The notes in question were not strictly commercial paper; for on their face they appear to be a mortgage, and they are relied on to give a lien on real estate. Strong v. Jackson, 123 Mass. 60, 25 Am. Rep. 19. In that case it was held that it was the duty of a bank that bought the note, with a lien appended, to examine the record, which would have revealed the fraud of the party who assigned the note. Appellee knew. that the money for which the notes were pledged was loaned to Robertson and his associates, and was not intended for the use and benefit of appellant. This was a suspicious circumstance, and appellee must have known that the president of a corporation is not given power to execute notes in the name of his corporation to be used to secure his individual debts. In discussing a similar question in Ward v. Trust Company, 192 N. Y. 71, 84 N. E. 588, the Court of Appeals held:

"The trust company had ample opportunity to learn all the facts; for it had representatives on the board of directors of the Hartman Company, the apparent owner of the check. According to the custom of business men, and especially of banks, the first inquiry would have called for a resolution of the board of directors authorizing Umsted to use the check to pay his own debts. The minute book of the board was open to examination by the representatives of the trust company, but, when examined, it would have shown no such authority; for the resolution relied upon, broad as it was, simply authorized Umsted as president to take charge of the property and business of the company and to sign checks, notes, and other obligations in its behalf. This meant that he could do these acts only in transacting the business of the company; for no other construction would be reasonable. There was no suggestion of permission to give away the assets of the company or to use them to pay the personal debts of its officers. Such dangerous power, which might involve the ruin of the company, cannot be conferred unless the intention is expressed with the utmost clearness."

[11] In the case under consideration the president of the corporation, with representatives of two other corporations, sought a loan of $10,000, and among other paper produced two notes given by the president for his corporation to still another corporation, and gave them as collateral security to appellee. The two notes were executed on May 26, 1913, and on the same day were assigned to the Rio Grande Construction Company as collateral security, and in five or six days they are placed in the hands of appellee as collateral for a debt of two corporations and the president of appellant company. The transaction was sufficient to put any reasonable man on notice that some transaction was going on, not in the interest of appellant, but to its detriment and contrary to its wishes. There was enough evidence of a conspiracy

to arouse the suspicion of any business man or concern.

[12] The evidence showed unmistakably that the notes were given without consideration and fraudulently put in circulation, and it then devolved upon appellee to prove that it was a bona fide holder of the notes for value. The presumption arising from the mere fact of possession of the notes was overcome by the suspicious circumstances in evidence, and there should have been proof by appellee of its bona fides. National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676.

[13] There are no elements of estoppel in this case. Appellant's agent, without authority, executed two notes to a corporation to whom appellant owed nothing, and for which notes it received nothing, and the notes are then transferred to another corporation, and in a very short time are produced to secure a debt partly owed by the president. Is it not clear that the execution of the two notes, their transfer, and their placing as collateral security were parts of one and the same transaction? What did appellant do to estop it from refusing to pay notes fraudulently executed in its name? It has not sinned, but has been sinned against. The recitals in the two notes were not its recitals, but the recitals of one who had no authority to make them, and they were absolutely false. The facts form no basis for estoppel against appellant.

The least effort upon the part of appellee would have disclosed the fraud, for fraud it was to give notes in the name of a corporation for an imaginary debt, and then pledge them to secure a debt in which appellant had no interest whatever, but no effort was made. The circumstances were sufficient to put any one upon inquiry who had any interest in discovering the truth about the execution of the notes.

The judgment is reversed, and judgment here rendered that appellee take nothing by its suit, and that it pay all costs in this behalf expended.