## PRAIRIE LEA PRODUCTION CO. v. LIN-COLN TANK CO. et al. (No. 7081.)

Court of Civil Appeals of Texas. Austin.
March 30, 1927.

Rehearing Denied April 27, 1927.

1. Sales ⊛357(1)—Company dealing with person other than defendant in selling oil tank equipment, to recover of defendant, must prove it was real purchaser or assumed debt.

Before company dealing with person other than defendant in sale of oil tank equipment can recover against the defendant, it must show that the debt sued upon was in fact at that time defendant's debt, or that defendant subsequently assumed it.

2. Corporations ⊛406(2)—Corporation president as such has no more authority to contract for corporation than any other officer (Rev. St. 1925, art. 1327).

Corporation president, in absence of authority conferred by its charter or specially vested in him by the board of directors, has no more power or authority to contract or act for the corporation than any other officer, in view of Rev. St. 1925, art. 1327, providing that the directors have general management of the affairs of the corporation.

3. Corporations ⊛429 — Person contracting with corporation through directors held to have had no reason to assume that president alone might alter contract.

One contracting with corporation through board of directors thereby recognized that the power to make the contract was vested in the board of directors, and he had no reason to assume that the contract might be materially altered by agreement with the president alone.

4. Mines and minerals ⊛105(2)—Manager of corporation owning oil lease held without authority to agree to pay for equipment of third person developing lease under contract.

General manager of corporation owning oil lease which third person was developing under contract with the corporation held without authority to agree with such person to pay for repairs and new equipment, since his right of management had been expressly turned over to such person by contract.

5. Mines and minerals ⊛105(2)—Corporation owning oil lease held not liable for equipment for which manager agreed to pay, where seller dealt solely with third person developing lease under contract.

Where company selling new equipment and repairing oil tanks dealt solely with person developing oil lease under contract with the corporation owning the lease, it could not hold the corporation liable for the repairs and equipment, because the general manager of the corporation agreed with the person developing the lease that the corporation would pay therefor.

6. Judgment ⊛634—Judgment in unrelated case to which plaintiff was not party held not to impose liability on defendant to pay plaintiff's claim.

Where obligations and claims imposed on defendant by a judgment in an unrelated case to which plaintiff was not a party were expressly confined to litigation in that suit, *held* no liability could be imposed on defendant by virtue of such judgment to pay plaintiff's claim.

7. Sales ⊛17—Where oil lease was partitioned between corporation and buyer of equipment who developed lease, corporation was not liable for cost of equipment on its portion.

Where oil lease was partitioned between defendant corporation and one who had contracted to develop the lease and who had bought tanks and materials, *held* that corporation was not liable to seller of such equipment, though it was located on the acreage set apart to defendant in the partition.

8. Appeal and error ⊛221, 719(9)—Where appellee made no objection to court's omission to foreclose materialman's lien as prayed and assigned no error, question was not reviewable.

Where plaintiff appellee in its petition asked that a materialman's lien be foreclosed, but the judgment of the trial court did not establish or foreclose such lien, and no objection was made and no error assigned, the appellee cannot have that matter reviewed on appeal.

9. Mines and minerals ⊛105(2)—Corporation president and manager could not bind corporation by ratifying own unauthorized agreement to pay for tank equipment.

Where corporation president and manager had without authority agreed to pay for certain repairs and oil tank equipment, his payment of $500 on account *held* not to bind the corporation, since he could no more ratify his unauthorized act than he could bind the corporation by it originally.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by the Lincoln Tank Company against the Prairie Lea Production Company. The Prairie Lea Production Company impleaded J. E. Walsh and A. M. Eversole, composing the partnership of Walsh & Eversole, and H. B. Daviss trustee thereof. Judgment for plaintiff, and for Walsh & Eversole, and defendant appeals. Reversed and remanded.

E. B. Coopwood, Nye H. Clark, both of Lockhart, H. B. Daviss, of Corsicana, and Marshall Eskridge, of San Antonio, for appellant.

C. F. Richards, of Lockhart, and Hal Browne, of San Antonio, for appellees.

BAUGH, J. The Lincoln Tank Company sued the Prairie Lea Production Company, a corporation, for $3,640.74 and interest, claimed to be due it for certain oil tanks, and for labor done and materials furnished in repairing other oil tanks, on an oil lease in Caldwell county, and asked for a foreclosure of a mechanic's, laborer's, contractor's, and materialman's lien on the property. The Prairie Lea Production Company impleaded J. E. Walsh and A. M. Eversole, composing the partnership of Walsh & Eversole, and H.

B. Davis, trustee thereof, alleging that the debt sued upon was the debt of said Walsh & Eversole and not that of appellant. Of the amount sued for $1,500 was for new tanks furnished, and the balance for labor, material, and repairs. By amended petition, the Lincoln Tank Company prayed, in the alternative, that if appellant was not liable for $2,141.74 for labor, materials, and repairs, then that it have judgment for that amount against Walsh & Eversole. The case was submitted to a jury on special issues, and on their findings and those of the court judgment was rendered in favor of Lincoln Tank Company against appellant and that appellant take nothing against Walsh & Eversole.

The Prairie Lea Production Company owned, amongst others an oil and gas lease on 20 acres of land in Caldwell county, in a proven field. On August 2, 1923, said company, acting through its board of directors, entered into a written contract with J. E. Walsh under which Walsh was to develop said 20 acres and furnish all labor and materials therefor at his own cost and expense. This contract was not introduced in evidence, but the above terms were admitted by all parties thereto. Walsh subsequently assigned a part of his interest in said lease to Eversole. About three weeks after this contract was made. Walsh went into the store of A. J. McKean at Prairie Lea, in Caldwell county, and after discussing the matter with McKean, who was president of the Prairie Lea Production Company, wrote out himself, and induced McKean to sign, the following letter:

"McKean Bros. Mercantile Company—General Merchandise.

"Prairie Lea, Tex., Aug. 20, 1923.

"J. E. Walsh, Luling, Tex., Dear Sir: Taking into consideration the fact that we must conserve all oil possible on our lease, also taking into consideration the present conditions of the storage tanks now upon the lease, this is to inform you that we, the Prairie Lea Production Company, agrees and consents to allow you to fix up the present tanks in the proper manner so as to save all oil possible, and if necessary to put up at least two thousand barrel additional storage all at our expense. [Signed] A. J. McKean, President Prairie Lea Production Co."

It is upon this letter that the Lincoln Tank Company chiefly relies to hold appellant corporation liable. The first two issues submitted to the jury, and their answers, were as follows:

No. 1. "Did the Prairie Lea Production Company authorize J. E. Walsh to incur the account sued upon by the plaintiff? Answer: Yes."

No. 2. "Did A. J. McKean, as president of the Prairie Lea Production Company, authorize J. E. Walsh to incur for the account of the Prairie Lea Production Company any indebtedness for work and materials on the Merriweather Lease, over and above the indebtedness for the erection of four 500-barrel tanks? Answer: Yes."

Appellant brings 20 propositions based on numerous assignments; but only 2 substantial issues are raised. The first is, whether or not A. J. McKean, as president of the corporation, could, without any authority from its board of directors, alter, by the letter set out above, or in effect abrogate, in part at least, a written contract theretofore entered into by Walsh with the board of directors of the corporation. No question of ratification or estoppel is presented. Nor is there any question of the apparent scope of authority either in McKean or in Walsh to bind the corporation on the Lincoln Tank Company debt. McKean had no authority from the board of directors of appellant corporation to change its contract with Walsh, and they refused to ratify his acts in so doing. The Lincoln Tank Company when the debt was created did not know of, nor rely upon, the letter written by McKean, nor did their agent ever discuss the matter with any officer or representative of appellant corporation. It is not shown whether or not Creel, agent of the Lincoln Tank Company, was familiar with the terms of the contract between appellant and Walsh, but said contract was of record in Caldwell county at that time. Walsh testified that the acount was first charged to him, but that he returned same to Lincoln Tank Company, with instructions to charge it to appellant. Creel testified that in sending in the items to the Lincoln Tank Company he charged same to appellant, but on cross-examination he testified:

"I made the deal with Mr. Walsh all the way through for them. I relied upon Mr. Walsh to see that I got my money. I was looking to him because he was the man I dealt with, and the only man I dealt with. He told us that he was in charge of the property under contract, and was claiming an ownership in it."

[1] We think it is clear that in the original transactions the Lincoln Tank Company was dealing with Walsh and not with the Prairie Lea Production Company, and before they can recover against appellant they must show that the debt sued upon was in fact at that time the debt of appellant, or that it was subsequently assumed by appellant.

[2, 3] Under the statute, the directors have general management of the affairs of the corporation. Article 1327, R. S. 1925. And the general rule is that the president of a corporation, in the absence of authority conferred by its charter, or specially vested in him by the board of directors, has no more power or authority to contract or act for the corporation than any other officer. Standard Underground Cable Co. v. Telephone Co. (Tex. Civ. App.) 134 S. W. 433; Railway Co. v. Logue (Tex. Civ. App.) 139 S. W. 11; El Fresnal Irrigated Land Co. v. Bank (Tex. Civ. App.) 182 S. W. 701. There is no evidence as to what powers the charter of appellant corporation conferred upon its president. McKean himself testified that he had no author-

.ty from the board of directors to change Walsh's contract, and that he so told Walsh at the time. Nor can Walsh urge that he acted on the assumption that McKean had such authority. The letter attempted to alter the terms of his written contract with the corporation. In making that contract he had advised with his attorney, and had dealt with the board of directors, recognizing that the power to make it was vested in the board of directors. No less authority would be required to abrogate his contract or materially alter it. No such authority was shown to have been vested in McKean.

[4, 5] Nor was such authority implied. Appellees Lincoln Tank Company and Walsh & Eversole urged that McKean was the general manager of appellant company as well as its president and was therefore vested as such manager with powers co-extensive with the purposes of the corporation, which were to drill for and develop land for oil. This would undoubtedly be true if McKean had had actual management and control on the ground in developing this lease, or if Lincoln Tank Company's agent had dealt directly with McKean in such capacity. But such was not the case. Lincoln Tank Company dealt solely with Walsh and delivered the materials and performed the labor at his instance and on his credit. The lease was not being developed by appellant corporation through McKean as manager. On the contrary, the entire management of such development had been placed in the hands of Walsh himself under a written contract. The question here presented is not the powers of McKean as manager of the corporation in actively developing the lease, but his authority to alter a written contract with Walsh binding him to develop it without expense to the corporation. Hence these propositions of appellees and the authorities cited by them are not applicable.

[6] The second issue involved is whether or not liability for the debt sued upon was assumed by appellant corporation in a judgment entered in a suit by Prairie Lea Production Company against Walsh & Eversole involving this same oil lease. Appellant had brought a former suit against Walsh & Eversole to cancel the contract of August 2, 1923. Several other parties intervened, a trustee was appointed for Walsh & Eversole, and an agreed judgment entered therein setting apart by metes and bounds 6⅔ acres of said 20-acre lease to Walsh & Eversole, and 13⅓ acres to Prairie Lea Production Company. The tankage involved in this suit was located on the 13⅓ acres and in the partition went to the appellant; and appellees contend that in said judgment, which became final, and which was in evidence, appellant agreed to pay the debt herein sued upon. The language of that decree on which such contention is based is as follows:

"That said properties shall be decreed to the defendants J. E. Walsh and A. M. Eversole and title vested in H. B. Daviss, trustee, freed and clear from all right or claims of the Prairie Lea Production Company, and free and clear from all liens, claims or obligations of any kind of the said Prairie Lea Production Company growing out of and based upon the claim of the intervener J. M. McKean, represented herein by A. J. McKean, and of the interveners Dauchy and Bryant, and of the interveners John Merriweather, E. B. Coopwood, and C. F. Richards, or any and all other interveners in this cause, such debts, dues, obligations or claims, to be vested and fixed against the Prairie Lea Production Company and thereafter to be adjudicated as between said interveners and said company."

There is no merit in this contention. The obligations and claims imposed by said judgment on the Prairie Lea Production Company were expressly confined, and necessarily so, to those in litigation in that suit and held by the parties thereto. The Lincoln Tank Company was not a party to that suit, and the claim herein sued upon was not in any way litigated. It is obvious, then, that no liability for payment of it could be imposed on appellant in that judgment.

[7, 8] Nor is it material that the tankage involved was located on the acreage set aside to appellant. Under their contract Walsh & Eversole were to furnish all tanks and materials at their own expense, and in the partition the value of the entire property was presumably considered. It must be presumed, therefore, that on the portion set aside to Walsh & Eversole by the court was located other property, whether in tankage or not, which equalized the values of the respective portions. Of course, if properly preserved, the Lincoln Tank Company had its lien on the property. It asked for foreclosure thereof in its petition, but the judgment of the trial court neither establishes nor forecloses such lien, and the Lincoln Tank Company made no objection to that judgment and has assigned no error thereon. That being true, said appellee cannot have that matter reviewed on appeal.

[9] Nor is it material that A. J. McKean subsequently paid $500 on the account for the new tanks. In the absence of the approval of the directors, which was never given, he could no more ratify his unauthorized act than he could bind the corporation by it originally.

The judgment of the trial court is reversed and the cause remanded for another trial.