[11] Permitting the jury to take in their retirement the door which was introduced in evidence was not error. Article 751, Code Cr. Proc.; Holder v. State, 81 Tex. Cr. R. 194, 194 S. W. 163; Chalk v. State, 35 Tex. Cr. R. 116, 32 S. W. 534; other cases listed Vernon's Texas Crim. Statutes, vol. 2, p. 566.

[12] We fail to find in the remarks of counsel such infringement of the right of legitimate argument as would be calculated to taint the verdict with passion or prejudice. In the light of the expressions on the subject often made by the court, we, without quoting them, express the conclusion that the remarks criticized were legitimate deductions from and comments upon various phases of the evidence.

Impressed with the view that the record discloses no errors authorizing a reversal of the judgment, its affirmance is ordered.

STOPPELBERG et al. v. STOPPELBERG.
(No. 6381.)

(Court of Civil Appeals of Texas. San Antonio. May 19, 1920.)

1. Evidence ⟨⟩222(3)—Admission of defendant admissible as against him.

In action for partition by a widowed daughter-in-law and sister-in-law against her mother-in-law and brother-in-law, testimony that the brother-in-law had told the witness that certain of the personal property involved belonged in equal parts to him and his brother, plaintiff's husband, *held* admissible as between plaintiff and the brother-in-law.

2. Appeal and error ⟨⟩931(6) — Testimony heard by judge without jury presumed to have been properly applied.

Where a case is tried before the judge without a jury, the presumption will prevail that testimony was used only on the point and between the parties to which it could legally apply, particularly where there is sufficient competent evidence to sustain the judgment.

3. Discovery ⟨⟩70—Refusal to admit testimony of party who failed to appear for taking of deposition within discretion of court.

In view of a defendant's failure to appear for taking of her deposition on interrogatories pursuant to Rev. St. art. 3680, it was within the discretion of the trial court to refuse to allow her to testify, and to allow plaintiff to introduce the interrogatories to her in rebuttal of defendant's evidence, pursuant to article 3685.

4. Discovery ⟨⟩54—Notice of filing of interrogatories to parties or attorneys not required.

Under Rev. St. art. 3682, notice to parties in a suit or their attorneys of filing of interrogatories in order to take their depositions is not required, and failure to issue such notices was not evidence of a design to intrap defendants.

5. Husband and wife ⟨⟩262(1)—Land bought during marriage presumed to have been community property.

There is a presumption that land bought by a husband during the existence of the marital relation between himself and his wife was community property, and the burden was on the wife, sued, after her husband's death, for partition, to establish that it was her separate estate even though the deed was executed to her.

6. Husband and wife ⟨⟩255—Payment for land by wife from insurance on life of husband did not destroy community character.

Payment of the balance of the purchase money on a tract of land purchased by a husband out of insurance money on his life by his surviving wife to whom the deed ran did not destroy the community character of the property and stamp it as separate estate.

7. Partition ⟨⟩87—Charge against heir of proportionate part of purchase money of community property held proper.

In a daughter-in-law's suit for partition, where the court properly decreed certain land to be community property of defendant mother-in-law, who had paid part of the purchase price with her own funds, it properly charged the daughter-in-law with her proportionate part of the purchase money paid by defendant mother-in-law.

8. Husband and wife ⟨⟩258—Separate estate must reimburse community for proper improvements made in good faith.

Where improvements on a wife's land were made with community funds of husband and

wife, after the husband's death a daughter-in-law, widow of a son, was entitled to her share in such improvements as against her mother-in-law, under the rule that the separate estate of one member of the community must reimburse the community for any proper improvements made in good faith on separate estate with community funds; but, since no such claim should be permitted to affect or jeopardize the title to the land, a lien for such funds cannot be fixed on it.

**9. Husband and wife ⬥49½(8) — Evidence held to show husband intended to make gift of land to wife.**

In a daughter-in-law and sister-in-law's action for partition against her mother-in-law and brother-in-law, evidence *held* insufficient to show that the deceased father-in-law intended to make a gift of certain land to the mother-in-law, his wife, when purchasing it.

Appeal from District Court, Bastrop County; R. J. Alexander, Judge.

Action by Minnie Stoppelberg against Bertha Stoppelberg and another. From the judgment, defendants appeal. Judgment reformed, and, as reformed, affirmed.

The Bowers, of Giddings, for appellants. Maynard & Maynard, of Bastrop, for appellee.

FLY, C. J. This is an action for partition of property, real and personal, and for damages arising from a conversion of certain personal property, instituted by appellee against Bertha Stoppelberg and John Stoppelberg. The appellants are mother and son, and appellee, a widowed daughter and sister, in law. The property sought to be partitioned consisted of five tracts of land, seven bales of cotton valued at $1,050, 4,500 pounds of seed cotton, 200 bushels of corn, two tons of unbaled hay, and two tons of fodder. The property, alleged to belong to appellee alone and to have been converted by appellants, consisted of cattle, hogs, automobile, horse, piano, two organs, motorcycle, bicycle, buggy, and set of harness. Appellants answered that four of the five tracts of land, described in the petition, were the separate property of Bertha Stoppelberg, and that lot No. 1, block 17, in the city of Galveston, sought to be partitioned, belonged one-third to appellee and two-thirds to appellants; that all the personal property sued for was the separate property of Bertha Stoppelberg, except one bicycle and one motorcycle. Appellants filed a cross-action against appellee for conversion of two bales of cotton, one silver railroad watch, one small cooking stove, and one chest of blacksmith tools. No jury was demanded, and the trial judge rendered judgment in favor of appellee for a one-eighth interest in and to two tracts of land, one of 147.6 acres, and the other of 145 acres; for one-sixth of the Galveston lot; for one-half of seven bales of cotton, seed cotton, corn, tops, and fodder, all of the value of $1,830, and for the other personal property sued for, and for $250, her interest in improvements on the 82½-acre tract, and rendered judgment in favor of Bertha Stoppelberg for the 82½-acre tract and for $86.87½, being one-eighth of amount of purchase money paid by the said Bertha Stoppelberg on the 145-acre tract.

The findings of the court are sustained by the evidence. They show that Bertha Stoppelberg was the widow of Henry G. Stoppelberg, who died intestate in 1905, leaving as his heirs appellants and Paul Stoppelberg, the husband of appellee. Paul Stoppelberg, to whom appellee was married on September 11, 1918, died intestate on October 17, 1918, and at his death owned the personal property described in the petition, with the exception of one horse, one buggy, one set of harness, one piano scarf, one open-face silver watch, one tool chest, and one stove, which belong to appellants. He also died possessed of a one-fourth interest in and to the 147½- and 145-acre tracts, which he inherited from his father, who owned a one-half interest therein at the time of his death; Bertha Stoppelberg owning the other half. Two-thirds of the Galveston lot was the community property of Bertha Stoppelberg and her deceased husband; the other third being the separate property of her said husband. Bertha Stoppelberg paid $695 on the purchase price of the 145 acres of land, after her husband's death.

[1, 2] The court permitted William Schroeder to testify that John Stoppelberg, one of the appellants, had told him that certain of the personal property belonged, in equal parts, to him and his brother, Paul Stoppelberg, and that action is made the basis of the first assignment of error. No doubt the testimony was admissible as between appellee and John Stoppelberg, and, being tried before the judge, without a jury, the presumption will prevail that it was used only on the point and between the parties to which it could legally apply. Appellee had alleged that she and John Stoppelberg jointly owned the cotton, sorghum, and corn tops, and Schroeder testified that John Stoppelberg told him, not that all the personal property but that the last-mentioned property, was owned in equal parts by him and Paul. Appellants seem to ignore the fact that the admission was made by one of the parties, and cites authorities on declarations made by third parties to sustain the assignment. The presumption will prevail that the trial judge considered it as bearing upon the case against John Stoppelberg, especially as there is sufficient competent evidence to sustain the judgment. Lindsay v. Jaffray, 55 Tex. 626; Cole v. Noble, 63 Tex. 432. This rul-

ing disposes of the second assignment of error, which complains as to like declarations made by John Stoppelberg and Paul Stoppelberg as to the personal property mentioned. The court stated in his findings of fact that he had excluded from his consideration all declarations made by Paul Stoppelberg. He had the right to use the declarations of John Stoppelberg as affecting disputes between him and appellee. It was proved that Bertha Stoppelberg had admitted that the property belonged to John and Paul. In her depositions, taken as confessed, she admitted the same thing.

The findings of the court show that on January 27, 1919, interrogatories to Bertha Stoppelberg were filed by appellee, and a commission issued to take her depositions. Efforts were made to obtain her depositions from time to time, but the officer failed to obtain the same, although her house was visited, and a subpœna and attachment issued for her. Appellee introduced her testimony and rested as did appellants also. Appellants afterwards asked to be allowed to introduce evidence, and when Bertha Stoppelberg was introduced as a witness in her own behalf, and was asked questions covered by the direct interrogatories, appellee objected, and asked that said interrogatories be taken as confessed. The objection was sustained, and the witness was not permitted to answer questions covered by the interrogatories. The court found that Bertha Stoppelberg "failed and refused" to answer the interrogatories, and the notary public to whom the interrogatories were delivered certified that Bertha Stoppelberg and John Stoppelberg denied him admission to their house, and declined and refused to appear before him. The interrogatories were filed six months before the trial, and a subpœna was served on Bertha Stoppelberg on January 28, 1919, commanding her to appear and answer the interrogatories, and she was tendered a fee for her attendance, but she failed and refused to attend. An attachment was then issued for her, but she could not be found by the officers. Appellants filed a motion after she was not allowed to testify to matters about which the interrogatories were propounded, and then a motion was filed that Bertha Stoppelberg be allowed to answer the interrogatories at that time. The motion was sworn to by Bertha Stoppelberg, in which she stated that she was 70 years of age, and did not obey the summons to appear and answer the interrogatories because she was sick and in mental distress at the recent death of her son, Paul, but went to Giddings to consult with her attorneys about answering the interrogatories, and was seized with influenza, and was not able to answer the interrogatories, and then went to Houston for treatment, and was not able to answer until her trial came off. As to refusing the notary public admission to her house and refusing to appear before him, no answer was attempted. No time to consult with attorneys was requested. The returns of the officers are not contradicted, and no testimony was introduced by appellants to sustain their motion. As said by this court in Weinert v. Simang, 29 Tex. Civ. App. 435, 68 S. W. 1011:

"A number of cases have been cited by appellant to show that the court should have set aside the certificate of the officer and have permitted appellant to testify, but none of them hold that this court has the authority to determine that the action of the court in deciding against appellant on his motion to suppress the certificate in the first instance and to have another hearing on it in the second instance was erroneous, in the absence of a statement of the facts upon which the motion was tried."

The interrogatories are authorized by Rev. Stats. art. 3680, and taking them as confessed is authorized by article 3685. The finding of the trial judge would be sustained in the face of the affidavit, as the court could reject its contents if he desired. It was not supported by evidence. There was nothing tending to show any attempt to intrap appellants in taking the depositions.

[3] It was clearly within the discretion of the court to refuse to allow Bertha Stoppelberg to testify and to allow appellee to introduce the interrogatories to her in rebuttal of appellants' evidence. No abuse of discretion has been shown in this case. Jones v. Wright, 92 S. W. 1010; Railway v. Morris, 144 S. W. 1163; Ayers v. Harris, 77 Tex. 108, 13 S. W. 768; Bounds v. Little, 79 Tex. 128, 15 S. W. 225; Railway v. Robinson, 79 Tex. 608, 15 S. W. 584.

[4] Bertha Stoppelberg disclosed in her motion that, while she was so sick and mentally distressed that she could not go to Bastrop to answer interrogatories, she was able to go to Giddings to consult her attorneys, and her sickness did not prevent her from going to Houston and remaining away until July 10, 1919, when the case was tried, when she was able to go to Bastrop and offer to testify. Her own motion tended to show that she was evading the answering of the interrogatories. In the cases cited by appellants, evidence was introduced to show that there was no willful refusal to answer the interrogatories. Appellants relied alone on their motion to vacate the official certificate of the notary public. The law does not require notice to parties to a suit, nor to their attorneys, in order to take their depositions, and a failure to issue such notices was not evidence of a design to intrap appellants. Article 3682, Rev. Stats. They knew about the matter, and refused to answer the interrogatories. The third, fourth, fifth, and sixth assignments of error are overruled.

[5-7] The 145-acre tract of land having been bought during the marital relation be-

tween Bertha Stoppelberg and her deceased husband, the presumption obtains that it was community property, and the burden was upon her to establish that it was her separate estate. The fact that the deed was executed to Bertha Stoppelberg did not destroy the presumption that the property was community. Payment of the balance of the purchase money on the 145-acre tract out of insurance money on the life of the deceased husband by the surviving wife did not destroy the community character of the property, and stamp it as separate estate. The court properly decreed the property to be community, and charged appellee with her proportionate part of the purchase money paid by Bertha Stoppelberg. Allen v. Allen, 101 Tex. 362, 107 S. W. 528; Hayworth v. Williams, 102 Tex. 308, 116 S. W. 43, 132 Am. St. Rep. 879; Moore v. Moore, 28 Tex. Civ. App. 600, 68 S. W. 59; Miller v. Odom, 152 S. W. 1185. The deeds did not state that the property was the separate estate of the wife. According to the testimony of John Stoppelberg, his father agreed to furnish the money to pay for the 147 acres of land. There was no agreement that either tract of the land would be the separate property of the wife. There was no testimony tending to impress the character of separate property upon the land. If the $600 was given by the husband to the wife to pay for the land, there was no testimony tending to show that it was the separate money of the husband. The testimony was too vague and unsatisfactory to remove the presumption that the property was community estate. The seventh and eighth assignments of error are overruled.

The ninth, tenth, eleventh, and twelfth assignments of error are overruled. There was testimony tending to support the judgment of the court as to the cotton bales, the seed cotton, and other personal property.

[8] The question of the homestead rights of Bertha Stoppelberg in the 82½-acre tract of land is sought to be raised in the brief of appellant, but not in pleadings or proof. The improvements on the land were made with community funds, and appellee was entitled to her share in the same. It is the well-settled law of Texas that the separate estate of one member of the community must reimburse the community for any proper improvements made in good faith upon the separate estate with community funds. Furrh v. Winston, 66 Tex. 521, 1 S. W. 527; Schmidt v. Huppmann, 73 Tex. 112, 11 S. W. 175; Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567; Bullock v. Sprowls, 54 S. W. 657, affirmed by Supreme Court, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849; Summerville v. King, 98 Tex. 332, 83 S. W. 680, affirming 80 S. W. 1050. In all of these cases, however, it is asserted that no such claim would

be permitted to affect or jeopardize the title to the land. If that be the law, then the lien to secure the interest of appellee in the 82½ acres of land, the separate estate of Bertha Stoppelberg, was improperly fixed on that land.

The cases which appellants claim hold, where it is shown that the consideration in a deed taken in the name of the wife was the separate property of the husband, the presumption will arise that the husband made a gift to the wife, whether the recital in the deed shows it or not, do not so hold. They hold that where the evidence shows that the purchase money was the separate property of the husband, which he gave to the wife, the presumption of a gift to the wife of the land would arise, although the deed did not so recite.

[9] In this case the only testimony tending to show that the husband intended to make a gift of the 147 acres of land to Bertha Stoppelberg is the testimony of John Stoppelberg, a defendant, and, of course, interested party. He testified:

"I was not present with my mother when she bought the tract of 147 acres of land from Meyer, the second tract. I was not present at the time the deed was executed. As to whose money paid for that land, my mother paid for it. I don't recollect how much she paid for it; I think it was $600. I know why the deed was made to my mother. It was made to her because father said he did not want to pay the land off; that if she wanted to pay she could buy and he would furnish the money. The deed was made to Bertha Stoppelberg."

No inkling is given as to when and where the father made the declaration, nor to whom it was made. If made when the trade was consummated, John Stoppelberg was not there, and it is so inconsistent as to be unreasonable for the husband to say that he did not want to pay for the land, but that the wife could buy and he would furnish the money. That might be a loan, but not a gift to the wife, and it might be separate property or money belonging to the community, that he was lending. The evidence was too vague and unsatisfactory to be credited, and evidently it was rejected by the trial judge. The deed from Meyer recites the payment of $600 on November 1, 1899. In order to rebut the legal presumption that the property was paid for with community funds, the only testimony is the vague and indefinite assertion of one of the appellants that at some time and some place, not designated, the husband had said he would not pay for the land, but would let his wife have the money. The evidence was ignored, and it should have been ignored.

According to the theory of appellants, the husband of Bertha Stoppelberg bought no land, although he seemed to have the money, but gave his wife free rein in dealing in real

(222 S.W.)

estate on her own responsibility and for her own separate use and benefit. She had no money, but was compelled to look to his pocket while living and to insurance on his life after his death for the payments made on what is claimed to be her separate estate. What the idea was for taking the different deeds of conveyance in the name of the wife remains unexplained. Different motives might be assigned for such conduct of a husband, but it is unnecessary to indulge them, and all that is proper to presume is that the property was bought for the community and placed in the name of the wife.

The judgment will be reformed so as to eliminate the lien granted on the 82½-acre tract, and, as reformed, will be affirmed.

---

&#9901;&rarr;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes