## OMAR GASOLINE CO. v. MULLIGAN et al.*
### No. 12351.

Court of Civil Appeals of Texas. Fort Worth. June 28, 1930.

Rehearing Granted Sept. 27, 1930. Rehearing Overruled Oct. 25, 1930.

Bonner, Bonner & Childress, of Wichita Falls, and Stewart L. Tatum, of Springfield, Ohio, for appellant.

Bullington, Boone, Humphrey & King and Smoot & Smoot, all of Wichita Falls, for appellees.

BUCK, J.

This suit is over two real estate brokers' commissions, one in the sum of $18,000, claimed by Ed Mulligan, and the other in the sum of $5,000, claimed by Geo. W. Allen, from the Omar Gasoline Company.

The evidence shows that the Omar Gasoline Company was a trust association, acting under a declaration of trust, with seven trustees, who were authorized to elect a chairman of the board of trustees, a president, one or more vice presidents, a secretary, a treasurer, and "such other officers as they may deem necessary for the proper management of the trust." The only trustee residing in Wichita Falls, or in Texas, was G. A. Ritnour, who was secretary of the trust association, and was the local manager of the company's business and probably general manager. The declaration of trust provided that the trusteees shall have absolute control over, and full power, authority, and discretion to sell, transfer, mortgage, exchange, convey, or otherwise dispose of at public or private sale, any part or all of said trust fund, real estate, or other property owned or held by them at any time under the trust.

The facts show that Ed Mulligan went to see Ritnour in the fall of 1927. He did not know Ritnour before that time, and he had a conversation with Ritnour concerning the sale of the Omar Gasoline Company properties in December, 1927. He asked Ritnour if the Omar Gasoline Company properties were for sale, and Ritnour told him that he would sell them if he could get more than they were worth. Mulligan asked Ritnour what price he would charge, and he gave a price of $450,000. Later, he brought M. J. Adams, engineer for the Texas Company at Wichita Falls, to see Mr. Ritnour. At the first conversation, Mulligan told Ritnour that he thought $450,000 was more than the properties were worth, and that he would not bring a party over unless he could get 5 per cent. commission. Ritnour told him to bring the party over. He then took Adams over to

*Writ of error granted.

see Ritnour, and the three talked about the proposition of the Texas Company buying the Omar Gasoline Company properties. Later, at the request of Adams, Mulligan furnished some additional data to the Texas Company given him by Ritnour from his books. The properties consisted of a casinghead gasoline plant and a loading rack at Grandfield, Wichita county, and two "booster stations" to supply gas to the main plant. Mulligan testified that he saw, either at the office or on the streets of Wichita Falls, Ritnour some twenty times during the time the negotiations were pending, but Ritnour testified that he knew that Mulligan did not see him more than six or eight times. In September, 1928, Geo. W. Allen, who had theretofore been an engineer in the employment of the Texas Company, and was well acquainted with the value of the Omar Gasoline properties, talked with Ritnour about the sale of the properties. He came to Ritnour and told him that he had put the proposition up to the Texas Company and had gone to the field and looked over the properties. Finally, the Texas Company raised its offer from $300,000 to $360,000, effective December 1, 1928, and at this price the properties were sold some time in January, 1929.

Suit was filed by Ed Mulligan on the day the price for the properties was to be paid to the Omar Gasoline Company, plaintiff asking for 5 per cent. of the $360,000, or $18,000, as his brokerage fee. He sued the Omar Gasoline Company and G. A. Ritnour and the president of the company, E. H. Watts, and mentioned as defendants the other trustees, but service was had upon G. A. Ritnour for the Omar Gasoline Company and upon G. A. Ritnour personally and E. H. Watts personally.

On June 22, 1929, Geo. W. Allen sought to intervene, and alleged that, by a contract with the Omar Gasoline Company, he had effected the sale of the Omar Gasoline Company properties to the Texas Company for an agreed commission of $5,000; that he had been paid on this commission the sum of $500 in cash, and the evidence showed that at his instance the First National Bank, upon authority signed by G. A. Ritnour for the Omar Gasoline Company, accepted payment for a note that Allen owed the bank in the sum of $1,500. By the terms of the contract between the First National Bank and the Omar Gasoline Company, in the event that judgment should be rendered for Mulligan, for the commission for which he was suing, the bank was to return to the Omar Gasoline Company the $1,500 theretofore received by the bank in payment of a note of Allen to it.

The cause was tried before a jury on July 16, 1929, upon special issues, in answer to which the jury found: (1) That Ritnour listed with plaintiff Mulligan for sale the properties of the Omar Gasoline Company, which were later sold to the Texas Company; (2) that Ritnour agreed to pay to the plaintiff 5 per cent. commission on the amount for which said properties would be sold to the Texas Company; (3) that Ritnour had authority of the Omar Gasoline Company to make a contract with the plaintiff concerning the 5 per cent. commission plaintiff charged for his services; (5) that Ed Mulligan was instrumental in bringing together the owner of the properties, to wit, Omar Gasoline Company, and the purchaser, to wit, the Texas Company; (6) that Ed Mulligan did not abandon his efforts to sell the properties of the Omar Gasoline Company to the Texas Company before the sale was finally consummated between the Texas Company and the Omar Gasoline Company. In answer to special issue No. 8, to wit, "Do you find from a preponderance of the evidence that the plaintiff did procure a purchaser for the properties of the Omar Gasoline Company at a price and upon terms acceptable to the Omar Gasoline Company?" the jury answered, "Yes."

Upon this verdict the court rendered judgment against the Omar Gasoline Company, a trust association, composed of G. A. Ritnour, E. H. Watts, R. C. Crump, H. E. Smith, I. L. Dunn, E. F. Olmstead, L. F. Watts, trustees of the trust association, and the defendants, G. A. Ritnour and E. A. Watts, individually, for the sum of $18,000, with all costs incurred. The court further rendered judgment for the intervener, Geo. W. Allen, for a recovery against the same defendants in the sum of $4,500, together with interest from date.

From this judgment, the defendants have appealed to this court.

### Opinion.

We will first consider the appeal of the defendants as against the judgment in favor of Geo. W. Allen for $4,500.

During the trial, defendants filed a motion to strike the petition of intervention filed by Geo. W. Allen from the record, but none of the reasons assigned for striking said intervention was predicated upon a lack of service upon the defendants. Now the defendants assert that no service was had upon either of them on this plea of intervention, and hence no judgment in Allen's favor should be upheld. While the record does not disclose affirmatively that service was had on said plea, yet the defendant acknowledged in the court below, and counsel for appellant acknowledged in this court, that it owed Allen a balance of $3,000. No effort was made in the trial of the case to dispute the fact that Allen had been employed by the Omar Gasoline Company and its agents to make the sale, and Ritnour, defendant's witness, testified that the trustees of the association

agreed to pay Allen the $5,000 commission. We think, under such circumstances, judgment for Allen's commission should be reformed and affirmed, giving Allen judgment for only $3,000, he having received $500 cash and $1,500 paid to the bank by the Omar Gasoline Company on his indebtedness to the bank. We do not think that 10 per cent. damages should be allowed, and therefore overrule the motion of appellee Allen to assess such damages.

We will now consider the appeal as to the judgment in favor of Ed Mulligan. In seeking to prepare for the trial, the defendants below sought to take the deposition of Ed Mulligan. The following questions were asked:

"12. Did you agree to divide equally with G. A. Ritnour, secretary and one of the trustees for Omar Gasoline Company, any commission that you might earn or receive in selling this property?"

"20. Is it not a fact that Mr. Ritnour said that the matter of the sale of the properties had only been mentioned casually from time to time by some of his fellow officers and that he himself had no authority to sell it or make any contract to others relative to its sale? If this is not his exact language, state what it was as near as you can."

"22. Did you or anyone else to your knowledge make such an offer for the property or any other offer which Mr. Ritnour communicated to his fellow trustees and officers that you know of?"

"33. Except the one visit between M. J. Adams and G. A. Ritnour, when you were present more than a year ago, do you know of any later telephone conversations or personal conversations between Ritnour or anyone else connected with the Omar Company on the one hand and M. J. Adams on the other hand relative to the sale of this property prior to the first of November, 1928? If so, state who it was and where your information comes from."

"40. Is it not a fact that the trade (between the Omar Company and Texas Company) through other channels had been agreed upon and bound for more than two months before you ever heard of it? If this is not correct, state how long thereafter."

Appellants sought and expected to procure an answer of "yes" to questions 20 and 40, and "no" to questions 22 and 33. Of course, there were other questions asked, but we mention only these four as showing the trend of the inquiry. The interrogatories contained in the deposition sought to be taken were some 45 in number. The defendants applied to the clerk of the district court for commission to take the ex parte deposition of plaintiff Ed Mulligan, and the clerk inquired of counsel for defendants as to whether or not they had a copy of said interrogatories to be filed and left in her office, and counsel for defendant stated that no copy had been or would be filed, because in his opinion the law did not require such copy to be filed in an effort to take an ex parte deposition. Therefore the clerk issued a commission to the notary, and securely fastened thereto said 45 interrogatories. No file mark was put on the interrogatories by the clerk and no copy was left with the clerk. The commission was issued to John B. Rhea, a notary public, who duly summoned Ed Mulligan to answer said interrogatories. The notary informed the plaintiff that the law did not require that he be furnished with a copy of the interrogatories; that he could advise with his attorney, T. R. Boone, if he wanted to. The lawyer first insisted on his client being served with a copy of the interrogatories so that he could advise him as to answering any or all of them, and insisted on being present during the taking of the deposition so that he could advise his client about answering questions. But finally he consented, if he was permitted to be present during the taking of the deposition, not to advise with his client. He stated that his client was then willing to answer the interrogatories, and did not want to refuse to answer them, and was making this request through his attorney, as he thought it right to do so, and was not taking advantage of any one, and was personally willing for the defendant, or any of the defendants, or defendants' attorneys, or any of them, to be present and hear every thing that was going on. The notary told him that he would insist upon taking the answers of witness to such questions propounded consecutively and continuously, and declined to permit witness' counsel to be present at such examination or to give him, or his client, a copy of such interrogatories, or to read to him such interrogatories in advance of the taking of the answers thereto in regular order; whereupon said witness, under advice of his counsel, declined to answer any of said questions and interrogatories.

Upon motion of plaintiff to quash the deposition, taken as a confession of expected answers thereto, the court sustained the motion to quash.

Article 3769, Rev. Civ. Statutes, gives full discretion as to the rules to be applied in taking the deposition of the adverse party. It states that no notice of the filing of the interrogatories is necessary; that a commission to take the answers of the party to the interrogatories shall be issued by the clerk or justice, and be executed and returned by any authorized officer as in other cases; that a copy of the interrogatories need not be served on the adverse party before a commission shall issue to take answers thereto; that the examination of the adverse party

shall be conducted and testimony received in the same manner and according to the same rules which apply in the case of any other witness, subject to the provisions of this article; that, if the party interrogated refuses to answer, the officer executing the commission shall certify such refusal; and any interrogatory which the party refuses to answer, or which he answers evasively, shall be taken as confessed; that the party interrogated may, upon the trial of the case, take exception to the interrogatories on the ground that they are not pertinent, and to the answers that they are not competent evidence; and that it shall be no objection to the interrogatories that they are leading in their character.

In Otis v. Hatfield (Tex. Civ. App.) 235 S. W. 978, 979, this court said:

"Nor do we think that the objection urged should be sustained that neither the commission nor the interrogatories contained any notice to the witness that upon his failure to answer the questions, they would be taken as confessed. This provision is statutory, and one is presumed to know the law. Nor do we think that the fact that the district clerk placed his file mark only upon the commission attached to the deposition, and not to the deposition itself, renders such deposition subject to be suppressed. It is conceded that the interrogatories were left with the clerk at the time the commission was filed, and were attached to said commission. 18 C. J. p. 719, § 302; Fire Ass'n of Philadelphia v. Masterson et al. [Tex. Civ. App.] 83 S. W. 49, 50.

"Inasmuch as the plaintiff had the authority, under article 3680, V. S. Tex. Civ. Stats., to take the deposition of the defendant without notice, we can see no injury to the defendant by the failure to file the originals with the clerk and have the clerk issue the commission and attach it to copies of the interrogatories. Article 3682, V. S. Tex. Civ. Stats., provides that it shall not be necessary to give notice of the filing of interrogatories or to serve a copy thereof upon the adverse party in this kind of proceeding."

In Stoppelberg v. Stoppelberg, 222 S. W. 587, 589, by the San Antonio Court of Civil Appeals, it is said:

"The interrogatories are authorized by Rev. Stats. art. 3680, and taking them as confessed is authorized by article 3685. The finding of the trial judge would be sustained in the face of the affidavit, as the court could reject its contents if he desired. It was not supported by evidence. There was nothing tending to show any attempt to intrap appellants in taking the depositions.

"It was clearly within the discretion of the court to refuse to allow Bertha Stoppelberg to testify and to allow appellee to introduce the interrogatories to her in rebuttal of appellants' evidence. No abuse of discretion has been shown in this case. Jones v. Wright [Tex. Civ. App.] 92 S. W. 1010; Railway v. Morris [Tex. Civ. App.] 144 S. W. 1163; Ayers v. Harris, 77 Tex. 108, 13 S. W. 768; Bounds v. Little, 79 Tex. 128, 15 S. W. 225; Railway v. Robinson, 79 Tex. 608, 15 S. W. 584.

"Bertha Stoppelberg disclosed in her motion that, while she was so sick and mentally distressed that she could not go to Bastrop to answer interrogatories, she was able to go to Giddings to consult her attorneys, and her sickness did not prevent her from going to Houston and remaining away until July 10, 1919, when the case was tried, when she was able to go to Bastrop and offer to testify. Her own motion tended to show that she was evading the answering of the interrogatories. In the cases cited by appellants, evidence was introduced to show that there was no willful refusal to answer the interrogatories. Appellants relied alone on their motion to vacate the official certificate of the notary public. The law does not require notice to parties to a suit, nor to their attorneys, in order to take their depositions, and a failure to issue such notices was not evidence of a design to intrap appellants. * * * The third, fourth, fifth, and sixth assignments of error are overruled."

We conclude that the court erred in the quashal of the deposition, and that for this error the judgment of the trial court must be reversed and the cause remanded.

Appellee urges that, inasmuch as the statement of the notary in the certificate that the refusal of the witness to answer the interrogatories propounded did not show that the witness was contumacious or that he willfully refused to answer the questions, the action of the court should not call for a refusal. He cites the case of Bounds v. Little, 75 Tex. 316, 12 S. W. 1109, by the Supreme Court of Texas; Robertson v. Melasky, 84 Tex. 559, 19 S. W. 776, by the Commission of Appeals; Wofford v. Farmer, 90 Tex. 651, 40 S. W. 788, by the Supreme Court, and other cases.

In Bounds v. Little Justice Gaines said:

"The object of the statute, when first enacted, was to enable a party to a suit to obtain the testimony of his adversary, which he could not do at common law. Since the passage of the act permitting parties to testify, the Revised Statutes have been adopted; and the substance of the old statute has been retained, for the reason, it is presumed, that it allows leading questions to be asked, and also permits the party who propounds the interrogatories to controvert the answers by other competent testimony. Under its provisions, a party may obtain the testimony of his adversary without vouching for his credibility as a witness. Sayles' Civil St. arts. 2240, 2242. To give effect to the law, it was provided that, upon the refusal of the party in-

terrogated to answer, the interrogatories should be taken as confessed, upon the certificate of the officer to the fact. Id. art. 2243. But we apprehend that it is only in case of a deliberate refusal that the provision was intended to apply. It was certainly not intended that the certificate of the officer should be deemed conclusive in every case. We think, therefore, that if it be shown that he did not refuse, or that he declined under a mistake as to his rights, and not contumaciously, or that the notary induced him to believe that he need not answer, the interrogatories should not be taken as confessed: provided that at the trial he shows that he is willing to answer them."

In the instant case the witness did refuse, under the advice of his counsel, to answer the questions, unless the notary would consent that his lawyer should be present, and unless he should consent to other deviations from the requirements of the statute. For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

While the jury found in answer to interrogatories propounded that in listing the Omar Gasoline properties with the plaintiff Mulligan, and in promising to pay him 5 per cent. commission if he should find a purchaser willing and able to buy upon terms satisfactory to the defendant, said Ritnour was acting within the apparent scope of his authority, we doubt, under the facts, if the record supports such finding.

Article IV of the Omar Gasoline Company's declaration of trust provides that:

"All the property of every kind and nature, rights, privileges, franchises and interests of this Trust organization is hereby vested in, and shall be held managed and controlled, sold or exchanged by a Board of Trustees consisting of five (5) members (the membership of which may be increased to seven (7) at any meeting of the Trustees called and held for that purpose, and in the manner provided by the By-Laws of this Trust Organization), who shall hold said property in trust," etc.

Article VIII provides:

"The Trustees shall also have absolute control over and full power, authority and discretion to sell, transfer, mortgage, exchange, convey, or otherwise dispose of at public or private sale, any part or all of said Trust Fund, real estate, or other property owned or held by them at any time under this Trust, and upon such terms and conditions as they may see fit," etc.

In Manufacturers' Equipment Co. v. Cisco Clay & Coal Co., 15 S.W.(2d) 609, 613, the Commission of Appeals, approved by the Supreme Court, held, under certified questions from this court, that, while a joint-stock company operating under a declaration of trust is a partnership, it may vest management in a governing body, and can be bound only by contract authorized by such body. In that case the president of the Cisco Clay & Coal Company, a public trust, had contracted to pay the plaintiff for preparing and furnishing it certain plans and blue-prints for a paving brick plant. The defendant showed that it had a similar provision to the one quoted in its declaration of trust, and that the president did not have any authority to enter into the contract set out in the plaintiff's petition. The court said:

"It appears from facts recited in the certificate that appellee's president had not been invested with actual authority to make the contract involved, and the question arises, Was such contract within the apparent scope of the authority of such president? A president of such a company, or a corporation for that matter, has no actual authority by virtue of his position alone to bind his company by contract. In order to bind a joint-stock company or corporation by the contract of its president, he must be authorized to make it either by the statutes of this state, the terms of the by-laws, or by appropriate action taken by the directors, trustees, or other governing body. Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S. W. 1078; Standard Underground Cable Co. v. Southern Independent Telephone Co. (Tex. Civ. App.) 134 S. W. 429; El Fresnal Irrigated Land Co. v. Bank of Washington (Tex. Civ. App.) 182 S. W. 701. Neither does any apparent authority exist in such officer by virtue of his position."

The court further said:

"While joint-stock companies are partnerships to the extent that they cannot limit the individual liability of their shareholders for the debts of the concern, yet their method of operation varies from ordinary commercial partnerships in such a way a different rule has been applied to such organizations in respect to their right to vest the contracting power of the partnership in a board of trustees or other governing body. In such organizations the death of a shareholder or partner does not dissolve the partnership, nor does a transfer of the interest of a partner in the company operate as a dissolution thereof. Persons are thus brought into the partnership with whom the other partners have no acquaintance and about whom they possess no knowledge as to their honesty or business integrity. Neither are they afforded a matter of choice as to the persons who shall become members of the partnership. Operating under these conditions, if such a concern must be bound by all contracts made by any one of its large membership, as in an ordinary partnership, the transaction of business through the medium of a joint-stock company would be wholly impracticable, if not altogether impossible."

In the instant case, the record does not disclose any positive authorization by the board

of trustees to G. A. Ritnour to make this contract, and under the authorities cited we do not believe that he had the apparent authority to make the contract.

Evidence must show the broker or agent to be the procuring cause of the sale. See Parker v. Lawrence (Tex. Civ. App.) 284 S. W. 283; Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848.

The defendant objected to the charge and issues to be submitted to the jury, for the reason that the charge proposed entirely omits to inquire of the jury whether Ed Mulligan or G. W. Allen was the procuring cause of the sale; appropriately defining the term "procuring cause."

The court did submit to the jury issue No. 5, as follows: "Do you find from a preponderance of the evidence that the plaintiff Ed Mulligan was instrumental in bringing together the owner of the property, towit, Omar Gasoline Company, and the purchaser thereof, to-wit, the Texas Company?" To which the jury answered, "Yes."

The law requires the real estate agent or broker to be the procuring cause of the sale, or of finding a purchaser willing and able to buy at the price and upon terms satisfactory to the seller. Certainly it is not sufficient that the broker be only instrumental in bringing together the seller and the purchaser.

Special issue No. 8 submitted this issue:

"Do you find from a preponderance of the evidence that the plaintiff did procure a purchaser for the properties of the Omar Gasoline Company at a price and upon terms acceptable to the Omar Gasoline Company?" To which the jury answered, "Yes."

We do not think this issue and the answer thereto sufficiently submits to the jury the question as to whether the plaintiff was the procuring cause of the sale of the property, or the procuring cause in finding a purchaser willing and able to purchase the property at the price and upon terms satisfactory to the seller. An agent might procure a purchaser without being the procuring cause of the sale. For instance, as in this case, one agent might be the first to bring the seller and the purchaser together, and yet have nothing to do with the actual sale. We believe that the trial court erred in not submitting the issue requested. This issue would be immaterial, in the absence of any proof that Ritnour had the authority to make the contract upon which Mulligan relies for recovery.

We do not find it necessary to further discuss the case as shown by the record, but the judgment in favor of Ed Mulligan is reversed and the cause is remanded. The costs of this court and of the trial are adjudged against appellee Mulligan.

On Motion for Rehearing.

Both appellee Ed Mulligan and appellant, Omar Gasoline Company, filed motions for rehearing. We have considered appellee Ed Mulligan's motion, and conclude that our former judgment in reversing and remanding his cause of action is justified. Therefore the motion is overruled.

Appellant files a motion for rehearing, contending that the judgment should be reversed as to both appellees, and Chief Justice CONNER and Associate Justice DUNKLIN have concluded that its motion must be granted. I respectfully dissent, for the reasons stated in the opinion on original hearing. Motion is granted by the majority; R. H. BUCK, Associate Justice, dissenting.